IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DONALD HUBAND,

      Petitioner,

v.                                                               CV 12-805 WJ/WPL

TIMOTHY HATCH, Warden, and
GARY KING, New Mexico Attorney General,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Donald Huband filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging ineffective assistance of counsel at trial, the violation of his Sixth Amendment right to counsel of choice, and cumulative error due to ineffective assistance of counsel. Respondents Timothy Hatch, Warden of the Northeast New Mexico Detention Facility, and Gary K. King, New Mexico Attorney General, filed an answer to Huband's petition requesting that the Court dismiss the petition with prejudice. Having reviewed the pleadings, record, and relevant law, I find that the petition is "mixed" in that it includes both exhausted and unexhausted claims. I therefore recommend that Huband dismiss his unexhausted claims without prejudice within 14 days of an order adopting the Proposed Findings and Recommended Disposition ("PFRD") so that I may address his exhausted claims on the merits. If Huband fails to do so, I recommend that the entire petition be dismissed without prejudice.

### FACTUAL & PROCEDURAL BACKGROUND

On July 9, 2006, Stephen Blankenship flagged down Ruidoso, New Mexico, police officers. Blankenship told the officers that he had just escaped his girlfriend Shamarie Huband's

home ("the home") after her estranged husband, Huband, had forced his way inside, broken down the bathroom door, pointed a rifle at both Blankenship and Shamarie while threatening to kill them, struck and kicked Shamarie, and pulled Shamarie around by her hair. (Record Proper CR-06-117 "RP" at 11.)

Four Ruidoso police officers went to Shamarie's home. They observed Huband outside the home, smoking a cigarette. The police announced their presence, after which Huband ran into the house, grabbed his rifle in one arm and Shamarie in a headlock hold in the other arm, and forced Shamarie out the door in front of him as a shield from the police. Huband then complied with police orders to put down the rifle, and he was taken into custody.

The State filed a criminal complaint against Huband on July 10, 2006, containing seven counts: 1) aggravated burglary, 2) kidnapping (Shamarie), 3) kidnapping (Blankenship), 4) aggravated battery against a household member, 5) aggravated assault against a household member, 6) aggravated assault, and 7) criminal damage to property. (*Id*. at 9-10.) Gary C. Mitchell, P.C., entered an appearance on behalf of Huband on July 17, 2006, pursuant to a contract with the Public Defender Department. (*Id.* at 4.) On July 18, 2006, Huband and Timothy Rose, then practicing with Gary C. Mitchell, P.C., signed a Waiver of Preliminary Hearing stating that Huband waived his right to a preliminary hearing in exchange for the kidnapping charge as to Blankenship being replaced with false imprisonment and the aggravated assault charges being dropped. (*Id.* at 2.) While the waiver did not contain the prosecutor's signature, the criminal information filed on July 28, 2006, contained the following charges: aggravated burglary, kidnapping, false imprisonment, aggravated battery, and criminal damage to property (*id.* at 13-14).

Four months later, the State filed a criminal complaint against Huband in a second case for two counts of criminal solicitation of first-degree murder. (Record Proper CR-06-189 "RP2" at 19; *see also id.* at 28-29, 122-23.) Jessup Parsons, a fellow inmate of Huband's, informed officers that Huband wanted Shamarie and Blankenship killed and that he was willing to pay someone to complete the act. A New Mexico State Police officer visited Huband undercover and asked Huband what he needed. Huband stated, "I want them bye, bye." Huband did not care how the act was done or if it were messy or clean—the two just had to be together. Huband described where Shamarie and Blankenship worked and their appearances. The undercover officer then asked how much Huband was willing to pay, to which Huband responded that he would pay $6,000 for both. Huband wanted the job done the same night but would pay at a different time, and he provided a description and license plate number for Shamarie's vehicle and a description of Blankenship's vehicle. New Mexico State Police officers then visited the store where Shamarie and Blankenship worked, verifying the appearances of the pair and of the two vehicles.

Gary Mitchell and Timothy Rose represented Huband until January 9, 2007, when Charles E. Hawthorne entered an appearance and substituted for prior counsel. Huband's trial on the original five charges was scheduled to begin February 13 or 15, 2007, or March 8, 2007, on a trailing docket. Yet Hawthorne soon moved to withdraw as counsel because Huband wished to hire Joshua Carpenter, and the court granted the motion.

Carpenter Law, P.C. entered its appearance on behalf of Huband on February 7, 2007. Meanwhile, on February 6, 2007, the prosecutor moved to continue Huband's trial due to a scheduling conflict with another trial, and the court granted the motion. On March 14, 2007, Chief District Judge Karen L. Parsons entered an order reassigning the solicitation charges to

3

District Judge Frank K. Wilson, who was already presiding over the original five charges. (*See id.* at 66.)

David Pottenger, a newly hired associate of Carpenter Law, P.C., filed a motion to withdraw as counsel on April 9, 2007, citing divergent interests such that Huband's representation was in detriment. On April 17, 2007, Pottenger withdrew the motion to withdraw, asserting that counsel and Huband had reconciled their differences.

Pottenger appeared for Huband's pretrial conference on May 18, 2007, before Judge Wilson. On May 29, 2007, the court entered a notice of hearing, setting Huband's trial in both cases to begin June 11, 2007. Between that date and trial, Pottenger filed several motions and other documents, the first on May 30, 2007, and the remainder on June 5, 2007. Judge Wilson held a hearing on all pending motions in the case on June 8, 2007.

On the morning of the first day of trial, the State filed an amended criminal information, charging Huband with aggravated burglary, kidnapping, false imprisonment, aggravated assault against a household member with a deadly weapon[1], and criminal damage to property. (RP at 167-68.) Pottenger represented Huband at trial. The jury found Huband guilty of all charges against him. (*See id.* at 255-56.)

On June 25, 2007, prior to his sentencing hearing, Huband substituted Timothy Rose, now of The Rose Law Firm, P.C., to represent him once again, and Rose filed a motion for a new trial. The motion stated that Huband was prejudiced and did not receive a fair trial due to wrongful joinder of the solicitation charges with the five original charges, ineffective assistance of counsel, and the violation of Huband's right to testify on his own behalf. (*Id.* at 296.) Rose filed a request for a hearing on the motion for a new trial (*id.* at 341-42), but the court did not grant a hearing and denied the motion by operation of law (*see id.* at 532).

---

[1] This charge replaced the aggravated battery charge. (*See* RP at 158-59.)

Huband's sentencing hearing took place on October 10, 2007, and the court entered a formal judgment and sentence on March 7, 2008. Huband was sentenced to ten years each as to the aggravated burglary and kidnapping counts, each including a one year firearm enhancement, to run concurrently; thirty months each as to the false imprisonment and aggravated assault counts, each including a one year firearm enhancement, to run concurrently with each other but consecutive to the first two counts; one hundred eighty days as to the criminal damage to property count, to run consecutive to the prior four counts; and nine years each as to the criminal solicitation of first-degree murder counts, to run concurrently to each other but consecutive to all prior counts, for a total of twenty-two years. (*Id.* at 520-21; Doc. 18 Ex. B.)

Rose filed a notice of appeal (RP at 523) and a motion to remand (*id.* at 564-67). Attached to the motion to remand was an affidavit from Pottenger, outlining why he believed that Huband did not receive a fair trial. (*Id.* at 568-71.) The State objected to the submission of the affidavit as not being a proper part of the record on appeal. (Doc. 18 Ex. F.) The court denied the motion to remand (*see* Doc. 18 Ex. G) and clarified that the record on appeal would include only those matters presented to the district court (*see* Doc. 18 Ex. H).

In his appellate brief, Huband asserted five primary issues: 1) improper joinder of the two cases and unlawful reassignment of CR-06-189, 2) the State's improper amendment of the criminal information from aggravated battery to aggravated assault in violation of Huband's due process rights, 3) the court's incorrect jury instructions as to the charges of aggravated burglary and aggravated assault, 4) ineffective assistance of counsel, and 5) the denial of Huband's right to the attorney of his choosing. (Doc. 18 Ex. I.) With respect to his ineffective assistance of counsel claims, Huband argued, among other claims, that Pottenger was "wholly unprepared for trial," resulting in his failure to impeach witnesses, adequately cross examine the State's

5

witnesses, and call witnesses for the defense; that he failed to object to joint trials for the five original counts and the criminal solicitation charges; that he gave Huband incorrect advice regarding his right to testify on his own behalf; and that he failed to object to the amendment of the aggravated battery charge to a charge of aggravated assault.

The New Mexico Court of Appeals affirmed Huband's convictions on February 17, 2010, holding that Huband failed to preserve his arguments as to all claims except ineffective assistance of counsel. (Doc. 18 Ex. K.) With regard to Huband's ineffective assistance of counsel claim, the court held that Huband had not established a prima facie case showing performance below that of a reasonably competent attorney, or prejudice, but it advised that he could pursue his claim in habeas proceedings. The court noted that New Mexico courts have a preference for addressing ineffective assistance of counsel claims in habeas proceedings. Rather than remanding the case for an evidentiary hearing as to the ineffective assistance of counsel claims, the court instead left development of these claims to habeas review.

Huband filed a pro se petition for writ of certiorari on May 10, 2010. (Doc. 18 Ex. N.) He presented four questions for review: 1) whether Chief Judge Parsons erred by joining the two cases, 2) whether the trial court erred by charging Huband with aggravated burglary, 3) whether the trial court erred by failing to sua sponte instruct the jury of the lesser-included offense of false imprisonment as to the charge of kidnapping, and 4) whether Huband had the right to enter the home, and if so, whether he had the right to defend his life and property. The Supreme Court of New Mexico denied the petition for writ of certiorari on June 3, 2010. (Doc. 18 Ex. O.)

On April 11, 2011, Huband filed a pro se petition for a writ of habeas corpus with the Twelfth Judicial District Court of New Mexico. (Doc. 18 Ex. P.) Huband alleged violations of procedural due process, ineffective assistance of counsel, violation of the fundamental fairness

doctrine, and abuse of power and discretion. Huband stated that he was not represented at trial by the attorney he had hired to represent him—Carpenter—but rather an attorney without trial experience who was not familiar with the case and who did not request a continuance or file a motion to separate the two cases. He asserted that he was denied the right to an arraignment as to the aggravated assault count when the state substituted this charge for aggravated battery. Huband also claimed that Pottenger was not prepared for trial, as he reviewed discovery and consulted with Huband during the State's case, making Pottenger unable to listen adequately to the State's direct examination of State witnesses.[2] Further, Huband argued that Pottenger failed to call certain defense witnesses, including prior counsel and the prosecuting attorney, who could impeach Shamarie with evidence of her prior statements about co-ownership of the home. Huband stated that Pottenger should have called expert witnesses to testify to his mental health as well and that the cumulative effect of trial counsel's errors constituted ineffective assistance of counsel. Finally, among other claims, Huband asserted that the case was a miscarriage of justice involving fundamental error that had resulted in the conviction of an innocent man.

---

[2] In an affidavit attached to the petition, Pottenger stated that he was hired to work as an associate for Carpenter Law, P.C. after Huband was already a client of the firm. (Doc. 18 Ex. P at Ex. G.) Pottenger had little to do with the case until three weeks before trial, when Carpenter informed him that he and Kallie Woodward, another associate, would be representing Huband at trial. Pottenger was to sit second chair and cross-examine State witnesses; Woodward was to handle the rest of the presentation at trial. Pottenger rushed to prepare the case for trial, including filing pretrial motions and motions in limine. While Pottenger believed that the causes of action should be bifurcated to avoid prejudice to Huband, Carpenter told him that the firm was not being paid enough to do two trials. Woodward decided to go on vacation to Hawaii the Friday before trial and left Pottenger no prepared work. Carpenter said that he would attend trial in Woodward's stead, but he did not appear and instead sent a paralegal. While Pottenger went through case materials the weekend before the trial, he was forced to give an impromptu opening statement and prepare for cross examination during direct examination without any assistance. Meanwhile, his paralegal was busy trying to locate defense witnesses to determine whether they could attend trial the next day. Pottenger asserted that he did not believe Huband received a fair trial because Pottenger had conducted only five criminal trials in ten years, Woodward did not appear, Carpenter should have moved to bifurcate the case, and Carpenter should have appeared, as he knew the case better than both Pottenger and Woodward.

On April 15, 2011, the court issued an order appointing a public defender for Huband and allowed for an amended habeas petition. (RP at Order on Examination of Petition for Writ of Habeas Corpus.[3]) Public defender Brian Tucker entered an appearance on July 11, 2011, and he filed a supplement to Huband's petition for writ of habeas corpus on September 30, 2011. (Doc. 18 Ex. Q.) In the supplement, Tucker incorporated Huband's original petition for writ of habeas corpus and added two arguments. First, he argued that Pottenger was ineffective for failing to file a motion compelling performance of the alleged agreement involving Huband's waiver of a preliminary hearing in exchange for dropped charges. Second, he added to Huband's argument that Pottenger should have objected to the consolidation of the two cases and/or filed a motion for severance.

District Judge William H. Brogan entered an order denying habeas relief on January 26, 2012. (Doc. 18 Ex. T.) The court found that all but the ineffective assistance of counsel claims that were raised in Huband's direct appeal were settled by the court of appeals and would not be readdressed in the habeas proceeding. As to the ineffective assistance of counsel claims, the court found that Huband "fail[ed] to bring any specific facts to the attention of the Court that would achieve the level of falling below 'an objective standard of reasonable' representation by counsel. In fact, the record indicates adequate representation of counsel before and during the trial and during the sentencing phase." The court explained that while Huband suggested additional efforts Pottenger could have made, he did not state with specificity those actions which should have been taken or if those actions would have resulted in a different outcome for the case. Further, the court found that Huband did not point to any facts set forth in the record or other evidence that Pottenger failed to act as Huband alleged.

---

[3] The RP contains a section of documents without page numbers. Where no page number is available, I cite to the title of the document.

8

Upon the district court's denial of his habeas petition, Huband then filed a pro se petition for writ of certiorari with the New Mexico Supreme Court on April 23, 2012. (Doc. 18 Ex. W.) Huband argued that he received ineffective assistance at trial due to Pottenger's failure to impeach Shamarie for inconsistent statements about Huband's actions toward her at the home, a lack of investigation, a lack of expert testimony, failure to pursue certain pretrial motions, failure to request jury instructions on diminished capacity, failure to file a motion compelling the performance of the deal leading to Huband's waiver of a preliminary hearing, failure to object to consolidation and/or file a motion for severance of the two causes, and failure to request a continuance. He asserted that the two cases were improperly joined under Rule 5-203(A) and that evidence that would not have been cross-admissible in two separate trials came in and prejudiced his defense. Huband also argued various other claims not related to his amended federal habeas petition. The Supreme Court of New Mexico summarily denied the petition for writ of certiorari on May 24, 2012. (Doc. 18 Ex. X.)

Huband then filed in this Court a pro se habeas petition pursuant to 28 U.S.C. § 2254 on July 23, 2012, and an amended petition on August 6, 2012. (Doc. 1, 6, 7.) The previous magistrate judge's Report and Recommendation entered on May 21, 2013, found that Huband had filed a "mixed" petition with both exhausted and unexhausted claims, with the only exhausted claims as follows:

    I) Ground I – Ineffective Assistance for:
        A) Failure to investigate, generally;
        B) Failure to cross examine/impeach witnesses;
        C) Failure to present expert testimony, generally;
        D) Failure to pursue pretrial motions;
        E) Failure to object to joinder of trials;
        F) Failure to file motions to:
            1) separate trials; and
            2) request a continuance;
        G) Failure to prepare for trial by:

     1) failing to perform prior investigation; and
     2) failing to call experts.
  II) Ground II-Court's Abuse and Discretion of Power
     A) Judge Parson erred by improperly joining or consolidating the two criminal cases.
     B) Judge Wilson erred by determining that [kidnapping and aggravated assault] were "serious violent offenses."

(Doc. 21 at 5-6.) On June 10, 2013, the Court adopted the magistrate judge's Report and Recommendation, providing for dismissal without prejudice of Huband's claims unless Huband filed a new petition presenting only his exhausted claims. (Doc. 23.)

  Huband, with representation, filed an amended habeas petition on September 16, 2013, followed by a memorandum in support thereof on September 19, 2013. (Doc. 31, 32.) Huband brings three primary grounds for habeas relief: 1) ineffective assistance of counsel at trial, 2) violation of his Sixth Amendment right to counsel of his choice, and 3) cumulative error. (Doc. 31 at 6-11.) As to ineffective assistance of counsel at trial, Huband includes the following subclaims:

(1) failure to request a continuance in order to effectively prepare for trial;

(2) failure to file essential pretrial motions, including a motion to sever cases and a motion in limine on several issues, such as "the quality of the informant audio"[4];

(3) failure to gather witness impeachment materials, including information as to Jessup Parsons's purported gang affiliations and Shamarie's credibility regarding the sole and separate property agreement for the home;

---

[4] Huband is likely referring to audio from when two officers visited him in jail to obtain Huband's reaction to the purported deaths of Shamarie and Blankenship at the hands of the hitman. According to officer testimony, Huband chuckled when he heard the news; however, the chuckles are not readily apparent on the audiotape. (*See* RP at 362.)

(4) failure to interview prosecution witnesses or find out what they had said in pretrial interviews, resulting in mistaken beliefs as to upcoming witness testimony and his inability to prepare properly for cross examination;

(5) failure to adequately delve into community property issues regarding Huband's authority to enter the home;

(6) failure to present appropriate expert witnesses, including a handwriting expert to testify about the authenticity of Huband's alleged signature on a sole and separate property agreement for the home and a psychologist to testify to a possible diminished capacity defense;

(7) failure to accurately inform Huband about his ability to testify to the limited scope of his entrapment defense as to his solicitation charges;

(8) failure to move for Carpenter to represent Huband at trial; and

(9) failure to object to the amendment of Huband's charges to include aggravated assault, in violation of an agreement with the State waiving his right to a preliminary hearing.

(Doc. 31 at 6; Doc. 32 at 4-22.)

Huband argues that to the extent any of the claims in his amended habeas petition are unexhausted, the federal district court may review such claims pursuant to *Trevino v. Thaler*, 569 U.S. ---, ---, 133 S. Ct. 1911 (2013), decided after the filing of the Report and Recommendation. Respondents filed an answer arguing that *Trevino* does not apply to any of Huband's claims, that the Court should deny an evidentiary hearing, and that Huband is not entitled to habeas relief. Huband filed a reply, further arguing for the applicability of *Trevino* to certain unexhausted claims.

**EXHAUSTION AND PROCEDURAL BARS**

A federal habeas petitioner must give the state courts a fair opportunity to act on his claims prior to filing in federal court in order to satisfy the exhaustion requirement. *See* 28 U.S.C § 2254(c); *Picard v. Connor*, 404 U.S. 270, 275 (1971). To provide the state court with a fair opportunity to review a claim, the petitioner must invoke one complete round of the state's appellate review process. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Thacker v. Workman*, 678 F.3d 820, 839 (10th Cir. 2012). This requirement is not met if a state supreme court would have to read lower state court opinions or other documents beyond the petition or brief before it to determine the presence of a federal claim. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). "[A]lthough a habeas petitioner will be allowed to present bits of evidence to a federal court that were not presented to the state court that first considered his claim, evidence that places the claims in a significantly different legal posture must first be presented to the state courts." *Wilson v. Workman*, 577 F.3d 1284, 1294 (10th Cir. 2009). The state bears the initial burden of asserting exhaustion as a defense, but, once pled, the petitioner bears the burden of showing that he has exhausted all available state court remedies. U.S. R. GOV'G 2254 CASES 5(b); *Picard*, 404 U.S. at 275-76; *Hernandez v. Starbuck*, 69 F.3d 1089, 1091-92 (10th Cir. 1995).

A petition for habeas corpus containing exhausted and unexhausted claims is considered a "mixed petition." *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). The Tenth Circuit has stated that courts have four options when presented with mixed petitions:

> (1) dismiss the mixed petition in its entirety; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit.

12

*Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (citations omitted).

A claim is procedurally defaulted for purposes of federal habeas review if the petitioner does not obtain timely review of the trial court decision by the New Mexico Supreme Court. *Watson v. New Mexico*, 45 F.3d 385, 387 (10th Cir. 1995); *Ballinger v. Kerby*, 3 F.3d 1371, 1374 (10th Cir. 1993). When the New Mexico Supreme Court denies a petition as untimely, without considering the merits, it is an independent and adequate state ground for denying relief. *Watson*, 45 F.3d at 387. Federal habeas review of such a claim "is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### APPLICABILITY OF *TREVINO* TO HUBAND'S UNEXHAUSTED CLAIMS

Huband argues that the Court may hear any of his unexhausted claims brought in this petition pursuant to *Trevino*. (*See* Doc. 31 at 6, 8, 10.) I therefore examine whether I may consider any unexhausted claims or whether I am still presented with a standard "mixed petition."

As decided in two recent Supreme Court cases, a prisoner may show cause for a procedural default in state court, allowing for federal review of such claims in certain narrow circumstances involving ineffective assistance of counsel. *See Trevino*, 133 S. Ct. 1911; *Martinez v. Ryan*, 566 U.S. ---, ---, 132 S. Ct. 1309 (2012). In *Martinez*, the petitioner was incarcerated in Arizona pursuant to state court proceedings. *See id.* at 1313. The State of Arizona requires that ineffective assistance of counsel claims be brought in state collateral proceedings and does not allow such claims to be brought on direct appeal. *Id.* The Court held that

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 132 S. Ct. at 1320. The following year, the Court clarified the holding in *Martinez* by breaking down the requirements for showing cause for procedural default on the basis of ineffective assistance of counsel as follows:

> (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law *requires* than an 'ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding.

*Trevino*, 133 S. Ct. at 1916.

In *Trevino*, the Court expanded slightly the circumstances that may qualify for cause to excuse procedural default based on ineffective assistance of counsel. *See id.* at 1921. Unlike the Arizona law considered in *Martinez*, Texas law did not explicitly require that a defendant bring ineffective assistance of counsel claims for the first time in the initial collateral review proceedings and not during the direct appeal. *Id.* at 1916. Rather, Texas law appeared to allow ineffective assistance of counsel claims on direct appeal. *Id.* However, as to the fourth prong of the *Martinez* test, the Court found that a petitioner can still show cause for procedural default where state procedure makes it "virtually impossible" for the petitioner to adequately present ineffective assistance of trial counsel claims on direct review and receive meaningful review of those claims. *Id.* at 1918-19.

Regardless of whether *Trevino* would apply to procedurally defaulted ineffective assistance of counsel claims under New Mexico law, there is no evidence that Huband's

unexhausted claims are procedurally defaulted. According to New Mexico law, a prisoner sentenced under the laws of New Mexico may file a habeas petition asserting a violation of constitutional rights "at any time." N.M. STAT. ANN. § 31-11-6(A) (West 2014); *see State v. Sutphin*, 164 P.3d 72, 76 (N.M. 2007). Further, while "[t]he sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner," *id.* § 31-11-6(D), the law does not completely preclude review of a second or successive state habeas petition.

According to the New Mexico Supreme Court, "we will not consider grounds asserted in a second or successive [state habeas] proceeding which could have been, but were not, asserted in a prior [state habeas] proceeding. Such grounds omitted in the prior proceedings are deemed waived." *State v. Gillihan*, 524 P.2d 1335, 1336 (N.M. 1974). Huband's unexhausted ineffective assistance of counsel claims all could have been brought during the initial state habeas proceeding, as neither the facts nor the law has changed since the first petition. Nonetheless, the New Mexico Supreme Court also found that "[n]aturally, this holding will not apply to grounds constituting fundamental error or to situations in which the prisoner's mental capacities preclude an intelligent waiver." *Id.* That is, if the claims in Huband's case constitute fundamental error, the state district court could hear them on collateral review.

Fundamental error is defined as "such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense." *Id.* at 1337 (quoting *State v. Garcia*, 128 P.2d 459, 462 (N.M. 1942)). While New Mexico does not have established habeas case law as to whether ineffective assistance of counsel claims constitute fundamental error, *see Duran v. Bravo*, No. 10-cv-743 JB/GBW, Doc. 30 at 4-5 (D.N.M. May 26, 2011) (unpublished), the New Mexico

15

Supreme Court has stated that "effective assistance of counsel is a fundamental right," *Garcia*, 237 P.3d at 723 (citing *State v. Luna*, 594 P.2d 340, 345 (N.M. Ct. App. 1979) (allowing review of an ineffective assistance of counsel claim pursuant to the fundamental error doctrine on direct appeal)), and has recognized that the court could review ineffective assistance of counsel claims on direct appeal through the fundamental error doctrine, *id.* at 723 n.6.

Given this context, I cannot conclude that the state court would fail to find fundamental error and refuse to hear Huband's unexhausted ineffective assistance of counsel claims on the basis of procedural default in habeas proceedings. Without procedural default established, I cannot examine whether the *Trevino* exception applies such that the Court may consider the unexhausted ineffective assistance of counsel claims. Therefore, the amended petition remains a standard "mixed petition."

### HUBAND'S EXHAUSTED AND UNEXHAUSTED CLAIMS

As outlined in the factual and procedural background section, I have examined the claims brought in state proceedings and in the amended petition in order to determine which claims were exhausted in state court and which remain unexhausted. Those claims brought in the amended petition that were exhausted include the following ineffective assistance of counsel at trial claims, summarized:

1) failure to prepare effectively for trial;

2) failure to impeach witnesses;

3) failure to present expert testimony; and

4) failure to file essential pretrial motions, including a motion to sever cases and a motion to postpone trial.

(*See* Doc. 31 at 6.) I consider Huband's assertions that Pottenger was not prepared to deliver a proper opening or a meaningful closing argument as part of the claim that Pottenger failed to prepare effectively for trial, as these are bits of evidence not presented to the state court that do not place the claim in a "significantly different legal posture." (*See* Doc. 32 at 4, 10; *Wilson*, 577 F.3d at 1294.) As to the failure to impeach witnesses, this exhausted claim includes the failure to impeach Shamarie, generally. (*See* Doc. 18 Ex. P at 12; Doc. 18 Ex. W at 3.)

Those claims that Huband did not exhaust in state court but brought in the amended petition include the following ineffective assistance of counsel claims, summarized:

1) failure to accurately inform Huband of his ability to testify solely as to his entrapment defense (Doc. 31 at 6);

2) failure to object to the addition of the aggravated assault on a household member charge, in violation of Huband's agreement with the State (*id.*);[5]

3) failure to adequately investigate and show whether the home was Huband's community property (*id.*);

4) failure to file a motion in limine as to the quality of the informant audio (*id.*);

5) failure to interview prosecution witnesses (*id.*);

6) failure to ascertain what witnesses had said in their pretrial interviews (Doc. 32 at 4);

7) failure to prepare adequately to cross examine State witnesses because Pottenger was misinformed as to the nature of their testimony (*id.* at 5);

---

[5] Huband raised this claim dealing with Pottenger's failure to object to the amendment of charges on the day of trial on direct appeal to the New Mexico Court of Appeals, but nowhere else. (*See* Doc. 18 Ex. I at 31.) Huband did exhaust a similar subclaim for failure to file a pretrial motion compelling performance of a previous agreement. Tucker argued in the state district court habeas proceeding that Pottenger was ineffective for failing to file a motion compelling performance of the alleged agreement between Huband and the State. (Doc. 18 Ex. Q at 2-3.) Then, in his pro se petition before the Supreme Court of New Mexico, Huband repeated this subclaim of ineffective assistance of counsel. (Doc. 18 Ex. W at 6.) Huband does not specifically bring the claim that Pottenger should have filed a pretrial motion compelling performance of the agreement in his §2254 petition.

17

8) failure to impeach Jessup Parsons with respect to gang affiliations because Pottenger did not have a list of Parsons's tattoos (*id.* at 5, 22);

9) failure to hire a handwriting expert to opine on the validity of Huband's purported signature on a sole and separate property agreement for the home (*id.* at 7); and

10) failure to investigate a temporary insanity defense that could be brought in with expert testimony (*id.* at 7-8; *see also* Doc. 21 at 8).

While Huband did exhaust his claim of ineffective assistance of counsel for Pottenger's failure to impeach Shamarie, Huband did not exhaust his specific subclaim that Pottenger failed to impeach Shamarie as to Huband's authority to enter the home. (*See* Doc. 32 at 22.) Although Huband argued in his state district habeas petition that Pottenger failed to impeach Shamarie with evidence of her prior statements as to the ownership of the home (Doc. 18 Ex. P at 12), in his petition for a writ of certiorari from the New Mexico Supreme Court in habeas proceedings, Huband argued instead that Pottenger was ineffective for failing to impeach Shamarie for prior inconsistent statements about Huband's treatment of her at the house (Doc. 18 Ex. W at 3).

Finally, Huband also did not exhaust the following claims:

1) violation of his Sixth Amendment right to counsel of choice (Doc. 31 at 8; *see* Doc. 21 at 5-6); and

2) cumulative error (*id.* at 9-10; *see* Doc. 21 at 9).

### RECOMMENDED TREATMENT OF HUBAND'S MIXED PETITION

As discussed, the Court has four options with respect to dealing with "mixed" petitions. *See Fairchild*, 579 F.3d at 1156. Like the previous magistrate judge, I do not recommend stay and abeyance of this case pending State court proceedings. As before, Huband has not shown good cause for failing to exhaust all of his claims presented in the federal petition, and there is no

way of ascertaining how long it would take to resolve the unexhausted claims in state court. (Doc. 21 at 9-10 (citing *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) (providing that stay and abeyance is appropriate only where "the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," the "unexhausted claims are potentially meritorious," and "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics")).) I do not recommend dismissing the petition in its entirety because Huband recognized that he continued to bring unexhausted claims but appeared to make a good-faith argument that the Court could consider these claims nonetheless. Finally, I do not recommend ignoring the exhaustion requirement altogether and denying the petition on the merits because I have not determined that none of the petitioner's claims have merit.

I therefore recommend that Huband be given the opportunity to dismiss his unexhausted claims so that this Court may proceed with the exhausted claims. *See Fairchild*, 579 F.3d at 1156. Rather than recommending that Huband file an amended petition, I recommend that Huband be required to file a one-page certification with the Court within 14 days of an adoption of this PFRD, stating that he dismisses his unexhausted claims. If Huband dismisses the unexhausted claims, he will likely lose the opportunity to present those unexhausted claims to a federal court at a later date. *See Tapia v. Lemaster*, 172 F.3d 1193, 1195 (10th Cir. 1999) (finding that a petitioner who elects to proceed only on exhausted claims is deemed to have abandoned all unexhausted claims, and those claims may not be brought again in federal court unless the petitioner can meet the requirements for filing a successive petition); 28 U.S.C. § 2244(b)(1).

If Huband elects to return to state court to present his unexhausted claims rather than proceeding in federal court with his exhausted claims or he simply fails to file the one-page

certification, his petition will be dismissed in its entirety. In these circumstances, the federal habeas one-year limitation period would apply to *all* of Huband's claims, even those that are now exhausted and properly before this Court. *See generally Salazar v. Lemaster*, 130 F. App'x 208, 210 (10th Cir. 2005) (unpublished) (dismissing a § 2254 petition as untimely under similar circumstances).

## Conclusion

Upon review of the pleadings, record, and relevant law, I conclude that regardless of whether *Trevino* would apply to procedurally defaulted claims in New Mexico, there is no evidence that Huband's unexhausted claims are procedurally defaulted. The petition therefore remains "mixed," with exhausted and unexhausted claims. I recommend the following:

(1) that Huband be ordered to file a **one-page certification** stating that he has chosen to dismiss his unexhausted claims **within 14 days** of an order by the district judge adopting this PFRD; and

(2) if Huband does not file this one-page certification within 14 days of an order adopting this PFRD, that the entire petition be dismissed.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.