IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DONALD HUBAND,

    Petitioner,

v.                                                            CV 12-805 WJ/WPL

TIMOTHY HATCH, Warden, and
GARY KING, New Mexico Attorney General,

    Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Donald Huband filed an amended petition for habeas corpus pursuant to 28 U.S.C. § 2254, alleging ineffective assistance of counsel at trial, the violation of his Sixth Amendment right to counsel of choice, and cumulative error due to ineffective assistance of counsel. Respondents Timothy Hatch, Warden of the Northeast New Mexico Detention Facility, and Gary King, New Mexico Attorney General, filed an answer to Huband's petition, requesting that the Court dismiss the petition with prejudice. (Doc. 33.) On June 24, 2014, I entered a Proposed Findings and Recommended Disposition ("PFRD"), recommending that the Court find that Huband's amended complaint contained unexhausted claims and provide Huband with fourteen days to file a certification withdrawing his unexhausted claims so that the Court could address his exhausted claims. (Doc. 46.) The Court adopted the PFRD (Doc. 51), and Huband withdrew his unexhausted claims (Doc. 50). Only the exhausted claims are now before the Court.

Huband also moved to change one of the respondents from Warden Timothy Hatch to Warden Erasmo Bravo, the warden of the Guadalupe County Correctional Facility, where Huband is now housed. (Doc. 49.) Because the proper respondent in a habeas petition

challenging present confinement is the warden where the petitioner is currently being held, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (citations omitted), I recommend that the Court grant the motion and substitute Erasmo Bravo for Timothy Hatch.

The factual and procedural background of this case was outlined in full in the previous PFRD (Doc. 46), so I do not repeat this background here. Having reviewed the pleadings, the record, and the relevant law, I recommend that the Court deny the petition and dismiss this case with prejudice.

## STANDARD OF REVIEW

As the amended petition was filed on September 16, 2013, which is after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), AEDPA's standards apply to guide this Court's determinations. *See, e.g.*, *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons*, 531 F.3d 1306, 1319 (10th Cir. 2008). AEDPA requires federal courts to "be exquisitely deferential to the state court's resolution of the defendant's claims" when evaluating § 2254 habeas petitions. *Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012). The Supreme Court aptly described AEDPA as establishing "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. ---, ---, 131 S. Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted). Accordingly, if the state court adjudicates the merits of a claim, federal court habeas relief is only available if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1) (2012), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). When assessing whether

the state court's decision was unreasonable, the court must consider the decision "in light of the record the court had before it." *See Holland v. Jackson*, 542 U.S. 649, 652 (2004) (citing *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003)).

A state court's decision is contrary to law if the rule that it applies clearly contradicts governing law, as established by the Supreme Court, or if it decides a case differently than the Supreme Court did when presented with materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 404-05, 412-13 (2000). The decision is an unreasonable application of law if the state court applied clearly established federal law in an objectively unreasonable manner. *Id.* at 409. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 410) (internal quotation marks omitted) (emphasis in original). "Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* (quotation and internal quotation marks omitted). If the court determines that the state court decision is not entitled to deference under § 2254(d), it must evaluate the petitioner's claims de novo. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing ineffective assistance of counsel claim de novo after determining that state court decision was not entitled to deference).

It is not uncommon for a state court to summarily dismiss a petitioner's claims for relief. Such summary dismissals are presumed to be "adjudicated on the merits" even if the court provided no reasoning to support its decision. *Harrington v. Richter*, 562 U.S. 86, ---, 131 S. Ct. 770, 785 (2011). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id*. Even if the state court does not

explain its reasoning, the petitioner must show that "there was no reasonable basis for the state court to deny relief." *Id.* at 784; *see Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) (clarifying that under AEDPA, "we owe deference to the state court's *result*, even if its reasoning is not expressly stated").

Just as the reviewing federal court must show deference to the state court's determination of the law, it must also show deference to its determination of the facts. The state court's determination of the facts is unreasonable if the state court plainly misapprehends the record in making its factual findings and the misapprehension goes to a factual issue that is central to the claim. *Wiggins*, 539 U.S. at 528.

## DISCUSSION

Huband's exhausted claims now before the Court all involve ineffective assistance of counsel. Huband argues that he was denied his Sixth Amendment right to constitutionally effective counsel at trial. (Doc. 32 at 10.) Those ineffective assistance of counsel claims brought in the amended petition that were exhausted include the following, summarized:

1) Failure to prepare effectively for trial;
2) Failure to impeach witnesses;
3) Failure to present expert testimony; and
4) Failure to file essential pretrial motions, including a motion to sever cases and a motion to postpone trial.

A petitioner must show two elements to prove ineffective assistance of counsel: 1) Counsel's errors were deficient such that counsel's performance fell below an objective standard of reasonableness and counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, and 2) the petitioner was prejudiced by the deficient performance, with errors so

4

serious that petitioner did not receive a fair trial with a reliable result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because the state court reached the merits of Huband's exhausted claims, I will apply AEDPA's deferential standard of review to these claims. *See Webber v. Scott*, 390 F.3d 1169, 1174 (10th Cir. 2004).

> **I.   Failure to Prepare Effectively for Trial**

Huband argues that his attorney at trial, David Pottenger, did not devote the time and energy necessary to conduct a reasonable investigation in his case and that Pottenger was unprepared to represent him at trial. (*See* Doc. 32 at 11.) Huband asserts that Pottenger had performed no prior preparation or investigation when he arrived at trial and that Pottenger reviewed discovery and consulted with Huband during the presentation of the State's case, making it impossible for Pottenger to listen adequately to the proceedings. (Doc. 18 Ex. P at 8-10.) Further, Huband contends that Pottenger was not prepared to deliver an opening statement; that he reserved the right to make a statement at the beginning of the defense case; and that when he did attempt to deliver a statement, he could not construct a proper statement and was stopped by the judge.[1] (Doc. 32 at 4.)

The state district court determined that Huband "fail[ed] to bring any specific facts to the attention of the Court that would achieve the level of falling below 'an objective standard of reasonable' representation," and that "the record indicates adequate representation of counsel before and during the trial." (Doc. 18 Ex. T at 1.) Further, the court found that Huband had not shown any evidence that Pottenger failed to act, as Huband asserted, or that Pottenger's actions or inaction resulted in prejudice. (*See id.* at 2.)

---

[1] While Huband did not present to the state court the specific assertion that Pottenger was not prepared to deliver an opening statement, I include it here because this is a bit of evidence that does not place the claim in a "significantly different legal posture." *See Wilson v. Workman*, 577 F.3d 1284, 1294 (10th Cir. 2009).

The Supreme Court of New Mexico later denied, without explanation, Huband's petition for writ of certiorari. (Doc. 18 Ex. X.) I therefore "look through" to the state district habeas decision to determine whether the decision unreasonably applied or was contrary to clearly established federal law determined by the United States Supreme Court, or was based on an unreasonable determination of the facts based on the evidence at the state court proceeding. *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991); *see also Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir. 2013) ("[I]t is a common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is contrary to or an unreasonable application of clearly established federal law." (quotation omitted)).

The state district court correctly identified the "objective standard of reasonable[ness]" and prejudice prongs in the *Strickland* standard for ineffective assistance of counsel. *See* 466 U.S. at 687. Based on the record before the state court, there is no evidence that Pottenger did not prepare for trial, nor has Huband shown that any lack of preparation or investigation caused him prejudice. On the contrary, it was Pottenger who appeared for Huband's May 18, 2007, pretrial conference, and Pottenger filed a notice of entrapment defense, amended witness list, motion in limine, motion to suppress verbal responses, motion to dismiss charge of aggravated burglary, and motion to dismiss charge of criminal damage. (*See* Record Proper CR-06-117 "RP" at 133-154.) The state court's refusal to find ineffective assistance of counsel on the basis of Pottenger's failure to prepare effectively for trial appears reasonable, so there is no merit to Huband's claim.

**II.     Failure to impeach witnesses**

Huband exhausted his general argument that Pottenger failed to impeach witnesses, including Shamarie Huband ("Shamarie"), generally. (*See* Doc. 32 at 22.) During trial, Pottenger had Shamarie read her affidavit of non-prosecution and cross-examined her about the document.

(*See* RP at 286.) Pottenger also called Shamarie as a witness, and on direct examination asked her about prior inconsistent statements to the police and to Huband on the telephone. (*See id.* at 369-70.)[2] Pottenger did not ask Shamarie about alleged prior statements about the ownership of the home or about her affair with Blankenship. (*See id.*)

The state district court did not address each of Huband's ineffective assistance at trial subclaims individually. Rather, the same explanation for the denial of habeas relief applied to each of the subclaims generally. (*See* Doc. 18 Ex. T.) As such, the summary of the state district court's determination regarding Pottenger's alleged failure to prepare effectively for trial also applies to the instant subclaim and to the subsequent two subclaims, and will not be repeated here. Since I must assume that even summary dismissal of a claim is a decision on the merits, *see Harrington*, 131 S. Ct. at 785, I assume that each subclaim was analyzed on the merits and apply AEDPA's deferential standard.

"[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). Further, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Given that Pottenger did cross examine Shamarie about her affidavit of non-prosecution and other prior inconsistent statements, it is wholly reasonable that the state court did not find ineffective assistance of counsel for failure to impeach witnesses.

---

[2] Pottenger asked Shamarie about her statement to Officer Hacker the night of the incident at the house that somehow, she did not know how, her face got slammed into the door and about her recorded statement on the telephone with Huband in jail that she did not feel that the newspaper's description of Huband using her as a human shield was true. (*See id.*) Shamarie admitted that she had made both statements but that she was trying to protect Huband at the time. (*See id.*)

### III.     Failure to present expert testimony

Huband argues generally that Pottenger failed to present appropriate expert witnesses. (Doc. 31 at 6.) Then, he specifically argues that Pottenger should have called a handwriting expert to testify that Huband's purported signature on the sole and separate property agreement was not his signature. (Doc. 32 at 7, 22.) However, in his state habeas petition, Huband argued that Pottenger should have called an expert to testify as to his sanity at the time of the offenses and his ability to form specific intent. (Doc. 18 Ex. P at 14.) Because Huband only exhausted his general argument that Pottenger failed to present expert testimony and withdrew the unexhausted, specific claims, I address Huband's claim of ineffective assistance of counsel based on failure to present expert testimony as a general matter.

There are some cases "where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence . . . . There are, however, countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Harrington*, 131 S. Ct. at 788-89 (internal quotations omitted). As such, "[r]are are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach." *Id.* at 789 (internal quotations omitted).

While the state court did not specifically address the lack of expert testimony, Huband must still show that there was "no reasonable basis for the state court to deny relief." *Id.* at 784. Again, the defendant must overcome the presumption that trial counsel's actions could be "considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). In this case, Pottenger's trial strategy appeared to emphasize the inconsistencies in Shamarie's statements about the night Huband entered the home. As discussed, Pottenger cross-examined

Shamarie about her affidavit of non-prosecution and asked her on direct examination about prior inconsistent statements. (RP at 286, 369-70.) Had Pottenger called an expert to testify as to Huband's state of mind, for example, this might have been "distractive from more important duties," *Harrington*, 131 S. Ct. at 789, such as presenting evidence of the actual facts of the incident. Therefore, the state court's denial of habeas relief as to this prong of Huband's ineffective assistance of counsel claim was reasonable.

    **IV.**    **Failure to file essential pretrial motions, including a motion to sever cases and a motion to postpone trial**

Huband argues that Pottenger failed to move to sever the consolidated cases into two trials. (Doc. 32 at 12.) He states that he would have been able to "testify without inhibition" regarding the solicitation of murder charges had he received two trials and that as indicated by Pottenger's affidavit, the decision not to move for two trials was for financial reasons rather than strategic ones. (*Id.*) Huband argues that the state court's decision that Pottenger was not ineffective was an unreasonable application of clearly established law. (*Id.* at 13 n.5 (citing *Strickland*, 466 U.S. at 690-91)).

Huband argued in his state habeas petition that Pottenger failed to file a motion to sever the two cases even though he knew that the two cases were improperly joined. (Doc. 18 Ex. P at 7.) He also argued that he was "inherently prejudiced" by the consolidation because the two separate sets of charges were not of the "same or similar character" or "based on the same conduct or on a series of acts either connected together or . . . [part] of a single scheme or plan," as required in New Mexico. (Doc. 18 Ex. Q at 4-5 (citing NMRA, Rule 5-203)). Huband asserted that joining the unrelated cases made it difficult to testify as to one case but not the other and that the jury would be invited to use evidence that was not cross-admissible from one case in the other case. (*Id.* at 5.) Finally, Huband argued that Pottenger's attached sworn and notarized

affidavit explaining that he failed to file a motion to sever because his firm was "not being paid enough to conduct two separate trials" should "shock the conscience of the Court." (*Id.* at 5 (citing RP at 569); *see also* Doc. 18 Ex. P at Ex. G.)

NMRA, Rule 5-203(a), cited by Huband, provides for the mandatory joinder of offenses where the offenses "(1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts either connected together or constituting parts of a single scheme or plan." However, a defendant may file a motion for severance, and "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses . . ., the court may order separate trials of offenses . . . or provide whatever other relief justice requires." NMRA, Rule 5-203(c). These rules adopt the substance of Fed. R. Crim. P. 8(a) and 14(a).

At the trial level in New Mexico, a defendant moving for severance on the basis of improper joinder does not need to show prejudice, while a motion for severance of properly joined charges does require a demonstration of prejudice. *State v. Paiz*, 249 P.3d 1235, 1240 (N.M. 2011). However, at the appellate (or habeas) level, "the distinction between a Rule 5-203(A) claim and a Rule 5-203(C) claim becomes blurred since the basis for the prohibition against both misjoinder and prejudicial joinder is, essentially, prejudice to the defendant." *Id.* (quotation omitted). That is, a defendant must be able to show that misjoinder was prejudicial and not harmless error. *See id.* at 1241 (citing *United States v. Lane*, 474 U.S. 438, 446 (1986) (applying a harmless error standard to misjoinder under FED. R. CRIM. P. 8(a)). Similarly, where joinder is proper under Fed. R. Crim. P. 8(a), a defendant "bears a heavy burden [under Fed. R. Crim. P. 14(a)] of showing real prejudice to him because of joinder." *United States v. Dickey*, 736 F.2d 571, 589 (10th Cir. 1984). Therefore, whether the state court properly joined or

10

misjoined the charges, Huband must show that he was prejudiced by the joinder of offenses in order to demonstrate the prejudice prong of the *Strickland* standard for ineffective assistance of counsel.

Upon review of trial court proceedings, a test for whether the defendant was prejudiced by joined offenses is whether the evidence relating to each charge would have been cross-admissible in separate trials. *See United States v. Foreman*, 87 F. App'x 107, 110 (10th Cir. 2004) (unpublished) (quotation omitted); *State v. Jones*, 899 P.2d 1139, 1140 (N.M. 1995); *State v. Flores*, ---P.3d---, 2014 WL 4724691, at *6 (N.M. Ct. App. Sept. 23, 2014). Cross-admissibility is determined through an analysis of Fed. R. Evid. 404 and identical phrasing in NMRA, Rule 11-404(B). Under these rules, evidence of a crime, wrong, or other act may not be used to show propensity to commit the instant crime, but such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2); NMRA, Rule 11-404(B). If evidence is cross-admissible between offenses, a court then proceeds to weigh the probative value of the evidence against any prejudicial effect on the defendant under Fed. R. Evid. 403 or the identically phrased NMRA, Rule 11-403. *See United States v. Patterson*, 20 F.3d 809, 814 (10th Cir. 1994); *State v. Nguyen*, 939 P.2d 1098, 1101 (N.M. Ct. App. 1997).

The majority of case law dealing with cross-admissibility involves the admissibility of prior bad acts. Federal circuit law explicitly permits the use of subsequent bad acts under Fed. R. Evid. 404(b). *United States v. Olivo*, 80 F.3d 1466, 1469 (10th Cir. 1996) ("Regardless of whether 404(b) evidence is of a prior or subsequent act, its admissibility involves a case-specific inquiry that is within the district court's broad discretion."); *United States v. Peterson*, 244 F.3d 385, 392 (5th Cir. 2001) ("Our prior decisions clearly allow for evidence of 'bad acts'

subsequent to the subject matter of the trial for the purpose of demonstrating intent." (citation omitted)); *United States v. Latney*, 108 F.3d 1446, 1449 (D.C. Cir. 1997) ("Rule 404 draws no distinction between bad acts committed before and bad acts committed after the charged offense. . . . So long as the evidence makes a fact of consequence more or less likely, it is relevant."). Subsequent bad acts are particularly relevant as to intent during the former offense. *United States v. Mares*, 441 F.3d 1152, 1157 (10th Cir. 2006). The bad acts must be "similar to the charged crime and sufficiently close in time." *United States v. Davis*, 636 F.3d 1281, 1298 (10th Cir. 2011). Such similarity may be shown by "physical similarity of the acts or through the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses." *Id.* (quoting *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000)).

In the instant case, there were two sets of charges. The original offenses occurred on July 9, 2006, at Shamarie's home (RP at 167-68), while Huband was charged for solicitation of murder occurring on November 9, 2006 (Record Proper CR-06-189 "RP2" at 122-23). Based on testimony by Shamarie and Blankenship at the trial, it appears that evidence from the solicitation of murder charges was used to establish Huband's intent regarding the earlier charges. Pottenger cross-examined both Blankenship and Shamarie about their affidavits of non-prosecution. (*See* RP at 279, 286.) After Blankenship read his affidavit to the jury, he stated that the affidavit "was [from] before the second part of the stunt." (*See id.* at 279.) Following Shamarie's reading of her affidavit, she explained why she no longer agreed with her affidavit of non-prosecution:

> I was having a hard time reconciling that [Huband] could really want to hurt me. . . . After I became aware of the solicitation charges, then I felt like then that it had been a real ongoing thing that he wanted me dead. So my attitude changed after that. 'Cause I don't want to be dead!"

(*See id.* at 286.) Later, after Pottenger conducted a direct examination of Shamarie during the presentation of the defense case, the prosecution asked her what her frame of mind was when she gave her earlier, inconsistent statements about what happened the night Huband entered the home. (*See id.* at 379.) Shamarie explained that she felt sorry for Huband and that "[i]t was before the second incident," in reference to the solicitation charges. (*See id.*)

Given the testimony by Shamarie and Blankenship, the evidence of solicitation of murder crossed over at trial with the initial charges to show Huband's intent when he entered the home. Further, the evidence was used to provide an explanation for Shamarie's inconsistent statements and Shamarie and Blankenship's affidavits of non-prosecution, bringing to light their perception of Huband's intent to hurt the pair. That is, while the solicitation of murder charges were completely separate charges from those arising from the incident at the home, Shamarie and Blankenship's testimony combined the two incidents such that Huband was portrayed as "indulging himself in the same state of mind" for both offenses—that is, with the intention of harming Shamarie and Blankenship. *See Davis*, 636 F.3d at 1298. On this basis, it appears that the evidence of solicitation of murder was properly used under Fed. R. Evid. 404/NMRA, Rule 11-404(B) for the purpose of showing Huband's intent.

I now look at whether the probative value of the solicitation of murder evidence was substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403; NMRA, Rule 11-403. The record does not reflect that the trial confused the issues, misled the jury, caused undue delay, wasted time, or involved the presentation of needlessly cumulative evidence. The earlier charges were distinct from the solicitation of murder charges, and presented at trial as two distinct incidents, except for the commonality that the incident at the

home and the solicitations involved the same victims—Shamarie and Blankenship. Further, there is no evidence of unfair prejudice. The probative value of explaining prior inconsistent statements and demonstrating Huband's intent to harm outweighed any possible prejudice from the joinder. In addition, although Huband argues that he could have "testif[ied] without inhibition" about the solicitation charges had he received two trials, Huband did not show that had he testified as to the solicitation of murder charges, there would have been "a reasonable probability that [his] testimony would have raised in a juror's mind a reasonable doubt concerning his guilt." *Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004). Although Huband alleges in his amended habeas petition that Pottenger failed to accurately advise him about his ability to testify solely as to an entrapment defense regarding the solicitation of murder charges (Doc. 32 at 9, 12-13), this entrapment argument was not exhausted in state court and may not be addressed by this Court (*see* Doc. 46 at 17.) Therefore, because there was cross-admissibility and no indication of prejudice outweighing the probative value of the evidence, I find the state court's denial of habeas relief to comply with *Strickland* and to represent a reasonable determination of the facts.

I do not examine whether Pottenger was ineffective for failing to file a motion to postpone trial because I previously found reasonable the state court's decision refusing to find ineffective assistance of counsel for Pottenger's level of preparation prior to trial.

## CONCLUSION

For the foregoing reasons, I recommend that the Court grant Huband's motion to change respondents and substitute Erasmo Bravo, warden, for Timothy Hatch. I also recommend that the Court deny Huband's petition for a writ of habeas corpus pursuant to § 2254 and dismiss this

case with prejudice. I further recommend that a certificate of appealability not be issued. *See* 28 U.S.C. § 2253(c).

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.